# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PEDRO LUIS DE JESUS-ORTIZ<br>Defendant. | CRIMINAL NO. 24-46 (RAM)<br>16-773-31 |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America respectfully moves this Court to impose 41 months of imprisonment and three years of supervised release in criminal case no. 24-46 to be followed by a consecutive 10 months of imprisonment for criminal case number 16-773. In support of its request, the United States includes the following:

**I.   18 U.S.C. § 3553(a) sentencing factors support the sentences recommended by the United States**

a. The nature and circumstances of the offense

Defendant was an armed runner in a drug trafficking organization and convicted of conspiracy to distribute narcotics and possession of firearms in furtherance of a drug trafficking crime. *See* Crim. No. 16-773, ECF No. 1420. On December 2, 2022, he began his supervised release term in crim. case no. 16-773. Less than a year later, Defendant violated the terms of his conditions of release by using cocaine. Defendant then violated the terms of his supervised release by using controlled substances a second time and signed an admission of drug use on January 29, 2024.

> **Admission of Drug Use and Request for Treatment**
> *Admisión uso de Drogas y Solicitud de Tratamiento*
>
> Name/Nombre: Pedro De Jesus-Ortiz
> Pacts No./Núm. Pacts: [redacted]
> Sample Date/Fecha de Muestra: 1/29/2024 & 10/31/2023
> Sample Result: Positive to/Resultado de muestra positivo a: cocaine, suboxone
>
> Upon signing this document, I certify that I was notified of the consequences of my admission.
> *Al firmar este documento, Certifico haber sido apercibido(a) de las posibles consecuencias de mi admisión.*
>
> I have been informed that I may consult with my attorney before signing this admission and I
> *He sido informado(a) que puedo consultar con mi abogado antes de firmar esta admisión y yo*
>
> voluntarily waive this alternative. I also admit to my interest in receiving treatment (be it
> *voluntariamente renuncio a tal alternativa. Además, admito mi interés en recibir tratamiento (ya sea*
>
> inpatient or outpatient) for drug abuse, as required.
> *Interno o ambulatorio) para el abuso de drogas, según requerido.*
>
> I understand that the Court will be notified of this result and that this will not impede other
> *Entiendo que este resultado será notificado al Tribunal y que no impedirá que se tomen otras*
>
> adverse actions being taken that may include the modification or revocation of my supervised condition.
> *acciones adversas que pudieran incluir la modificación o revocación de mis condiciones de supervisión.*
>
> Date/Fecha: 1/29/2024    Signature/Firma: [signed]
>
> I have read and understand this notification and I am conscious of my right of a hearing.
> *He leído y comprendo esta notificación y estoy consciente de mis derechos a una vista.*
>
> Select one/Seleccione uno:
>
> [✓] I admit to the use of illegal controlled substances as mentioned.
> *Admito el uso ilegal de sustancias controladas según mencionado.*
>
> [ ] I do not admit to the use of illegal controlled substances as mentioned.
> *No admito el uso ilegal de sustancias controladas según mencionado.*
>
> Client's Signature/Firma Cliente: [signed]    Date/Fecha: 1/29/2024
> Witness Signature/Firma del Testigo: [signed]    Date/Fecha: 1/29/2024

**Figure 1. Copy Defendant's signed admission of drug use with the USPO.**

A mere *two days* after signing the admission of drug use with the U.S. Probation Office (USPO), Defendant was arrested by the police for buying cocaine at a drug point while possessing a firearm. Interestingly enough, Defendant refers to this conduct as the "signs of progress—not perfection." Crim. No. 24-26, ECF No. 2213 at 5.

On February 1, 2024, Defendant was arrested with two small clear plastic ziplock bags containing cocaine, one firearm, one extended magazine, and 45 rounds of ammunition.



**Figure 2. Items recovered during traffic stop and arrest.**

The Court should also take into account that Defendant was arrested with his consensual partner who had an active arrest warrant with full extradition from the state of New Jersey. He remains with this consensual partner to this day.

There is significance in the sequence of events leading to the new criminal conduct in crim. case no. 24-46 and violations leading to revocation proceedings in crim. case no. 16-773. Defendant will be sentenced in crim. case no. 24-46 for his new criminal conduct on

3

February 1, 2024, but Defendant will be sentenced in crim. case no. 16-773 for his breach of trust when he violated his conditions of released on three separate occasions. There is no dispute that Defendant violated the terms of his supervised release *before* his arrest on February 1, 2024. In total, Defendant breached the Court's trust and violated his conditions of release *three* times. Conflating Defendant's new criminal conduct and revocation proceedings to argue that any sentence in crim. case no. 24-46 somehow addresses the Court's concerns in his revocation proceedings in crim. case no. 16-773 downplays Defendant's breach of trust and is contrary to the Guidelines policy statement. The Guidelines clearly state,

> Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served **consecutively** to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.

U.S.S.G. § 7B1.3(F) (emphasis added).

As to Defendant's criminal conduct on February 1, 2024, while the Guidelines account for number of firearms, they do not account for other aggravating factors such as the number of magazines or rounds of ammunition. Here, Defendant was arrested with two magazines—one of which was extended—and 45 rounds of ammunition. In an attempt to minimize his unlawful activity *while on supervised release*, Defendant describes his conduct as "passive" possession. Crim. No. 24-26, ECF No. 2213 at 9. Neither the statutory language in 18 U.S.C. § 922(g)(1) nor the Guidelines recognize a distinction between "passive" possession of a firearm and what Defendant would presumably consider "active" possession. Why? Because possession of a firearm is unlawful and inherently dangerous conduct. Moreover, there is

nothing "passive" about arriving to drug point with a firearm, multiple magazines (one extended), and *numerous* rounds of ammunition to conduct a drug transaction.

  b. <u>Defendant's history and characteristics</u>[1]

Defendant was raised in a family environment were all his basic needs were met. He denied being abused or neglected. Further he stated that he is healthy aside from asthma and denied any history of mental or emotional health. In summary, and in contrast to many defendants who appear before the Court, Defendant benefited from family support and stability despite the loss of his father in his early years.

Defendant is 36 years old. This is not a young man. This is also not a man that will stand before the Court waiting to be sentenced for drugs and firearms for the first time. Defendant is old enough to know better and make better choices—especially given all the opportunities he has already received to rehabilitate his life. First, Defendant received the benefit of a lower sentence in crim. case no. 16-773 by pleading to stipulated amount of controlled substances. Second, Defendant received a chance to work on his addiction issues with assistance from the USPO but instead chose to abandon treatment and purchase cocaine. Third, USPO waited to file any motions notifying violations and tried to help Defendant with his substance abuse before bringing any issues before the Court. Unfortunately, Defendant does not want to help himself and does not deserve the Court's benefit of the doubt at sentencing because he has already demonstrated what he does when he is given a second chance.

---

1. *See* Crim. No. 24-46, ECF No. 73 at 9.-10.

> c. <u>The need to afford adequate deterrence to criminal conduct, promote respect for the law, and protect the public from further crimes</u>

Unlike many defendants that appear before this Court who illegally possessed firearms because they feared for their lives or were recently shot, that is not the case here. Defendant claims that he "had to protect himself" while also denying "having any threats or facing imminent danger." Crim. No. 24-46, ECF No. 73 at 5. So why did it Defendant possess a firearm, two magazines, and numerous rounds of ammunition after a felony conviction and *while on supervised release*? Because he wanted to and thought he could get away with it. That is indicative of who he is and why he continues committing crime. Because he thinks he can.

But Defendant's disregard for the law does not end there. After his arrest, Defendant added a BOP disciplinary incident to his record. Defendant assaulted a fellow inmate and was sanctioned to segregation for 30 days. Crim. No. 24-46, ECF No. 73 at 5.

**II.    Conclusion**

There are no mitigating factors in this case that warrant a low-end sentence in Defendant's new criminal case or his revocation proceeding. Defendant attempts to appeal to the Court's sympathy by telling "his story," but the Court already heard "his story" when he was first convicted for possessing of a firearm in furtherance of a drug trafficking crime and about to be sentenced in criminal case no. 16-773. In fact, the sentencing memorandums in criminal case nos. 24-46 and 16-773 are nearly identical and even include the exact same picture of Defendant and his family. For example, in 2021, Defendant informed the Court that (1) his father died from a heart attack, (2) his mother is economically struggling, and (3) his sister suffered a heart attack. *See* Crim No. 16-733, ECF No. 1408 at 3-4. He does the same now. It begs the question how many times does Defendant plan to use his father's death from 29 years ago and his sister's health to excuse or minimize his criminal conduct? Essentially,

nothing has changed since the last time Defendant was before the Court. Defendant may be "kind," but his kindness does not erase or mitigate his pattern of possession of firearms and drug use.

The United States therefore requests that the Court sentence Defendant to impose 41 months of imprisonment in criminal case no. 24-46 to be followed by a consecutive 10 months of imprisonment for criminal case number 16-773. In addition, the Government requests the maximum statutory term of supervised release in criminal case no. 24-46, which is three years.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this February 28, 2025.

                                              W. Stephen Muldrow
                                              United States Attorney

                                              *s/Linet Suárez*
                                              Linet Suárez
                                              Assistant United States Attorney
                                              USDC-PR No. G03015
                                              United States Attorney's Office
                                              350 Carlos Chardón Street
                                              San Juan, Puerto Rico 00918
                                              Linet.Suarez2@usdoj.gov
                                              Tel: (787) 282-1843

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the date above, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                              *s/Linet Suárez*
                                              Linet Suárez
                                              Assistant United States Attorney